UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

RUEBEN S.,[1]

    Plaintiff,

v.

ANDREW M. SAUL, the Commissioner of Social Security,[2]

    Defendant.

No. 4:19-CV-5125-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

    Before the Court are the parties' cross summary-judgment motions.[3] Plaintiff Rueben S. appeals the denial of benefits by the Administrative Law Judge (ALJ). He alleges the ALJ erred by 1) improperly determining that Plaintiff did not

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] Because Andrew M. Saul is the Commissioner of the Social Security Administration, the Court substitutes him as Defendant. *See* Fed. R. Civ. P. 25(d).

[3] ECF Nos. 13 &14.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

have a severe mental impairment; 2) improperly weighing the medical opinions; 3) discounting Plaintiff's symptom reports; 4) improperly determining that the mental-health impairments did not meet or equal a listed impairment; and 5) improperly determining step five based on an incomplete hypothetical question. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 13, and denies the Commissioner's Motion for Summary Judgment, ECF No. 14.

## I. Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[4] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[5] If the claimant is engaged in substantial gainful activity, benefits are denied.[6] If not, the disability-evaluation proceeds to step two.[7]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[4] 20 C.F.R. § 416.920(a).

[5] *Id.* § 416.920(a)(4)(i).

[6] *Id.* § 416.920(b).

[7] *Id.* § 416.920(b).

or mental ability to do basic work activities.[8] If the claimant does not, benefits are denied.[9] If the claimant does, the disability-evaluation proceeds to step three.[10]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[11] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[12] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[13] If the claimant is able to perform prior work, benefits are denied.[14] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[8] 20 C.F.R. § 416.920(a)(4)(ii).

[9] *Id.* § 416.920(c).

[10] *Id.*

[11] *Id.* § 416.920(a)(4)(iii).

[12] *Id.* § 416.920(d).

[13] *Id.* § 416.920(a)(4)(iv).

[14] *Id.*

economy—in light of the claimant's RFC, age, education, and work experience.[15] If so, benefits are denied. If not, benefits are granted.[16]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[17] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[18]

## II. Factual and Procedural Summary

Plaintiff filed a Title XVI application, alleging an amended disability onset date of October 27, 2015.[19] His claim was denied initially and upon reconsideration.[20] An administrative hearing was held by phone before Administrative Law Judge Jesse Shumway.[21]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since October 27, 2015, the application date;

---

[15] *Id.* § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[16] 20 C.F.R. § 416.920(g).

[17] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[18] *Id.*

[19] AR 15 & 200-14.

[20] AR 93-97 & 99-102.

[21] AR 32-58.

- Step two: Plaintiff had the following medically determinable severe impairments: left ankle fracture (status-post surgery on April 29, 2016) and obesity;
- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;
- RFC: Plaintiff had the RFC to perform light work except:

    > He can stand/walk only four hours total in combination in an eight-hour workday; he can only occasionally crouch and climb ramps, stairs, ladders, ropes, and scaffolds; and he cannot have concentrated exposure to extreme heat, extreme cold, humidity, pulmonary irritants, or hazards such as unprotected heights and moving mechanical parts.

- Step four: Plaintiff was not capable of performing past relevant work; and
- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff was capable of performing work that existed in significant numbers in the national economy, such as assembler production, merchandise marker, and inspector and hand packager.[22]

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the physical-health opinions of James Opara, M.D. and Gordan Hale, M.D.; and

---

[22] AR 12-31.

- little weight to the examining mental-health opinion of Kirsten Nestler, M.D. and the reviewing mental-health opinions of John Robinson, Ph.D., and Carla van Dam, Ph.D.

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.

### III. Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is

---

[23] AR 22.

[24] AR 1-6.

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record as a whole.[29]

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[31] The party appealing the ALJ's decision generally bears the burden of establishing harm.[32]

---

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[30] *Molina*, 674 F.3d at 1111.

[31] *Id.* at 1115 (quotation and citation omitted).

[32] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV. Analysis

### A. Step Two (Severe Impairment): Plaintiff establishes consequential error.

Plaintiff contends the ALJ erred at step two by failing to identify his mental impairments as a severe impairment. The Court agrees.

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities.[33] To show a severe mental impairment, the claimant must first prove the existence of a mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.[34] If a mental impairment is proven, the ALJ then considers whether the medically determinable impairment is severe or not severe. A medically determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."[35] Basic mental work abilities include understanding, carrying out, and remembering simple

---

[33] 20 C.F.R. § 416.920(c).

[34] *Id.* § 416.921 (recognizing the claimant's statement of symptoms alone will not suffice).

[35] SSR 85-28 at *3.

instructions, dealing with changes in a routine work setting, and responding appropriately to supervision, coworkers, and usual work situations.[36]

Step two is "a de minimus screening device [used] to dispose of groundless claims."[37] And "[g]reat care should be exercised in applying the not severe impairment concept."[38]

Here, each one of the three doctors who provided an opinion as to Plaintiff's mental abilities—Dr. Nestler, Dr. Robinson, and Dr. van Dam—opined that Plaintiff had a severe mental impairment. Even though there was no conflicting medical opinion, the ALJ discounted each of these opinions based on the ALJ's interpretation of the medical evidence and other evidence of record.[39] On this

---

[36] 20 C.F.R. § 416.921.

[37] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[38] SSR 85-28.

[39] The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a non-examining physician who neither treated nor examined the claimant. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a non-treating physician. *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). When a

record, the Court finds the ALJ's rejection of each of the three mental-health opinions (that Plaintiff has a severe mental impairment) contravenes the well-settled law that an ALJ may not render his own medical opinion and is not empowered to independently assess clinical findings.[40] "[W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a

---

treating or examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. The opinion of a nonexamining physician serves as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[40] *See, e.g., Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (holding an ALJ erred in rejecting physicians' opinions and rendering his own medical opinion); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings"); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (recognizing that as a lay person, the ALJ is "simply not qualified to interpret raw medical data in functional terms").

physician who [submitted an opinion to or] testified before him."[41] On this record, by rejecting each of the mental-health opinions that Plaintiff had a severe mental impairment, which is consistent with Plaintiff's social-interaction and stress-related challenges reflected in Plaintiff's criminal and employment history, the ALJ erred at step two.

Looking at the discounted mental-health opinions, Dr. Nestler performed a psychological evaluation of Plaintiff in February 2016.[42] As part of her psychological evaluation she reviewed three medical records from May 2015, interviewed Plaintiff, and conducted a mental status examination.[43] She observed Plaintiff as irritable and apathetic, shifting in his seat, being uneasy, with poor eye contact, with sparse, spontaneous speech, as difficult to engage and respond to questions with more than a very brief response, and with a flat and dysphoric affect. Dr. Nestler diagnosed Plaintiff with unspecified personality disorder, unspecified depressive disorder, and alcohol and stimulate use disorder in remission. Dr. Nestler opined that Plaintiff would have difficulty accepting instructions from supervisors, interacting with coworkers and the public, performing work activities on a consistent basis without special or additional instructions, maintaining regular attendance in the workplace, completing a

---

[41] *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (internal citations omitted).

[42] AR 332-37.

[43] *Id.* (citing AR 296-309).

normal workday/workweek without interruptions, and dealing with the usual stress encountered in the workplace.

Dr. Robinson and Dr. van Dam reviewed the medical record, including Dr. Nestler's report, and they both found that Plaintiff's personality and affective disorders were severe impairments. Dr. Robinson found that Plaintiff was 1) mildly restricted in his activities of daily living; 2) moderately restricted in maintaining social functioning because he would have difficulty interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and 3) moderately restricted in maintaining concentration, persistence, or pace because he would have difficulty carrying out detailed instructions.[44] Dr. van Dam largely agreed with Dr. Robinson, except she found that Plaintiff was also moderately (rather than mildly) restricted in his activities of daily living.[45]

The ALJ discounted the opinions of Dr. Nestler, Dr. Robinson, and Dr. van Dam because they were inconsistent with the longitudinal record, which the ALJ found contained no treatment, complaints, or observations of psychological

---

[44] AR 65-72.

[45] AR 80-87.

dysfunction.[46] For example, the ALJ highlighted that Plaintiff never reported any social or personality problems to his treating providers, but rather consistently denied any depression, behavioral issues, cognitive problems, or other psychological symptoms. The cited medical records predominately relate to Plaintiff seeking care for physical conditions.

While relying on physical-treatment records to discount a mental-health opinion may be appropriate on a different record, on this record, which includes crisis response records and jail records indicating that Plaintiff's insight, judgment, and impulse control were impaired and that he was agitated and irritable,[47] along with Dr. Nestler's consultative examination observations and findings, Plaintiff's work history, which reveals an inability to hold a job for more than twelve months,[48] and other medical records that indicate an altered mood and racing thoughts,[49] the physical-health records cited by the ALJ are inconsistent to constitute substantial evidence supporting a clear and convincing reason for

---

[46] The ALJ discounted Dr. Robinson and Dr. van Dam's consultative examination because they relied heavily on Dr. Nestler's report.

[47] AR 292-95, 310, & 319-25

[48] AR 215-24.

[49] AR 325-28 (Aug. 2014: self-inflicted lacerations); 412-15 (Aug. 2017: noting that Plaintiff was anxious); & AR 425 (Oct. 2017: noting that Plaintiff has missed his therapy appointments and that he has racing thoughts).

discounting the three medical opinions that Plaintiff has a severe mental impairment.

Moreover, one of the cited records is Dr. Opara's physical consultative examination noting that Plaintiff in fact reported to Dr. Opara that he has suffered from depression, has problems getting along with some people, and has problems getting a job. Dr. Opara found that Plaintiff had a flat affect, diagnosed Plaintiff with depression and personality disorder, and then deferred to a mental health examiner as to Plaintiff's mental limitations.[50] Another record reflects that a treating physician recommended that Plaintiff see a counselor and provided a psychological referral after an altercation with law enforcement.[51]

And the fact that Plaintiff did not report any cognitive problems is irrelevant as none of the mental-health physicians based their opinion that Plaintiff has a severe mental-health impairment on a cognitive disorder.[52] Finally, the ALJ's finding that Plaintiff does not have a severe mental health impairment because he

---

[50] AR 406-07.

[51] AR 24 (citing AR 338-41). *See Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in a claimant's records while ignoring others).

[52] *See Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (recognizing that it is not legitimate to discount an opinion for a reason that is not responsive to the medical opinion).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 14

had not reported social and personality problems to his treating providers is not a legitimate basis on which to base a non-severity finding as "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."[53]

The ALJ also discounted Dr. Nestler's opinion, and correspondingly the other two reviewing mental-health opinions, because it was based only on her one-time examination of Plaintiff. The number of times a claimant meets with a provider is a relevant factor in assigning weight to an opinion.[54] Additionally, the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion.[55] Here, Dr. Nestler is the only mental-health professional that met with Plaintiff and provided a mental-health opinion. Dr. Robinson and Dr. van Dam did not meet with Plaintiff, but they reviewed Dr. Nestler's opinion and the record, and found Dr. Nestler's opinion consistent with the objective evidence, including the mental status examination data and examination findings.[56] Given that the nonreviewing psychologists agreed with Dr. Nestler's opinion, that Dr. Nestler only

---

[53] *Regennitter v. Comm'r of Soc. Sec. Admin.,* 166 F.3d 1294, 1209-1300 (9th Cir. 1999).

[54] 20 C.F.R. § 416.927(c).

[55] *Id.*

[56] AR 67 & 82.

met with Plaintiff once was not a clear and convincing reason, supported by substantial evidence, to discount her opinion that Plaintiff had a severe mental impairment.[57]

Lastly, the ALJ discounted Dr. Nestler's opinion because it was inconsistent with Plaintiff's admitted daily activities, including his ability to take his dog for daily walks, go outside three times a day, shop in stores, and regularly go to the library. However, the ALJ failed to articulate how these daily activities reflect that Plaintiff's mental-health impairments are not severe. "[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace."[58] The ALJ failed to articulate how these activities conflict with the three medical opinions that Plaintiff's mental-health impairments have more than a minimal effect on his ability to work, including dealing with changes in a routine work setting and responding appropriately to supervision, coworkers, and usual work situations.

In sum, the Court finds the ALJ's step-two finding is not supported by substantial evidence. The medical records cited by the ALJ and the reasons cited by the ALJ for discounting the three medical opinions agreeing that Plaintiff has a

---

[57] *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

[58] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

severe mental impairment fail to constitute substantial evidence to support his finding that Plaintiff's mental impairments are not severe.

Although step-two errors are often harmless,[59] the ALJ's step-two error was not harmless. By finding that Plaintiff did not have a severe mental-health impairment, the ALJ crafted an RFC that contained only exertional, postural, and environmental limitations—no social-interaction, adaptation, or sustained concentration and persistence limitations were included in the RFC.[60]

The ALJ did pose a hypothetical to the vocational expert that included "mental" limitations. The vocational expert testified that work was available for an individual limited to unskilled and semi-skilled work, a routine, predictable work environment with no more than occasional changes, and with occasional superficial contact with the public, supervisors, and coworkers with no collaborative tasks.[61] The vocational expert then testified that an individual who was off task more than ten percent of the time and missing more than one day per month, or continued to fail to accept instructions from a supervisor after both a verbal and written

---

[59] *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

[60] *See, e.g., Mallard v. Berryhill*, No. 1:17-CV-1212-JLT, 2019 WL 498982, at *10–11 (E.D. Cal. Feb. 8, 2019).

[61] AR 55.

warning were given, would not be employable.[62] Based on Dr. Nestler's opinion that Plaintiff would have difficulty accepting instructions from supervisors, interacting with coworkers and the public, performing work activities on a consistent schedule without special or additional instructions, maintaining regular attendance in the workplace, completing a normal workday/workweek without interruptions, and dealing with usual workplace stress, the Court is unable to determine on this record whether the vocational expert would opine that an individual with Plaintiff's to-be-redetermined RFC is able to sustain work. Moreover, Dr. Robinson opined that Plaintiff is able to engage in work with "superficial and infrequent contact" with the general public, and Dr. van Dam opined that Plaintiff cannot have "extensive contact with the public or collaboration with coworkers," though incidental contact was permitted.[63] It is also unclear to the Court whether Dr. Robinson's infrequent contact and Dr. van Dam's incidental contact are synonymous with the hypothetical's "occasional superficial contact" with the public and coworkers.

**B.     Other Steps: The ALJ must reevaluate.**

Plaintiff argues that the ALJ also erred at step three and step five and misweighed Plaintiff's symptom reports. Because the ALJ's step-two finding, weighing of Plaintiff's symptom reports, and the RFC were based on an erroneous

---

[62] AR 56-57.

[63] AR 70 & 87

weighing of the medical evidence, the ALJ on remand is to proceed with a new sequential analysis.

## C.     Remand for Further Proceedings

Plaintiff submits a remand for payment of benefits is warranted. However, even if Plaintiff's mental-health impairments are considered severe and the RFC is revised to include all or many of the opined non-exertional limitations, it is not clear that there is no work existing in significant numbers that Plaintiff can perform. Therefore, remand for further proceedings, rather than for an award of benefits, is necessary.[64]

On remand, the ALJ is to reweigh the medical-opinion evidence and Plaintiff's symptom reports and reevaluate the sequential process beginning at step two. The ALJ is to consider whether to order a consultative psychological examination or to call a psychological medical examiner.

## V.     Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. The Clerk's Office is directed to substitute Andrew M. Saul, Commissioner of the Social Security Administration, as the Defendant.

---

[64] *See Garrison*, 759 F.3d at 1021; *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

2. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED.**

3. The Commissioner's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

5. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order, provide copies to all counsel, and close the file.

**DATED** this 11th day of March 2020.

s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge